# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

APRIL ADRIANA FOX,

        Plaintiff,

vs.

BLUE CROSS BLUE SHIELD OF
MICHIGAN LONG TERM DISABILITY
PROGRAM,

        Defendant.

Case No. 16-cv-01467
Hon. Robert J. Jonker

---

| | |
|---|---|
| TIMOTHY A. O'ROURKE, PLLC | HICKEY HAUCK BISHOFF & JEFFERS, PLLC |
| Timothy A. O'Rourke (P32443) | Benjamin W. Jeffers (P57161) |
| Attorney for Plaintiff | Attorneys for Defendant |
| 422 W. Lenawee | One Woodward Ave., Suite 2000 |
| Lansing, MI 48933 | Detroit, MI 48226 |
| 517.372.2900 | (313) 964-9019 |
| | bjeffers@hhbjlaw.com |

---

## DEFENDANT'S MOTION FOR JUDGMENT
## BASED ON THE ADMINISTRATIVE RECORD

This an ERISA benefit denial case. Pursuant to *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609 (6th Cir. 1998), and this Court's Case Management Order (Doc. #11), this matter is to be determined upon the parties' cross motions for judgment. Therefore, Defendant Blue Cross Blue Shield of Michigan Long Term Disability Program ("Defendant") through its attorneys Hickey Hauck Bishoff & Jeffers, PLLC, hereby moves for judgment based on the administrative record. The grounds supporting Defendant's Motion are set forth in the attached Brief.

Respectfully submitted,

_/s/Benjamin W. Jeffers_
Benjamin W. Jeffers (P57161)
Attorneys for Defendant
Hickey Hauck Bishoff & Jeffers, PLLC
One Woodward Avenue, Suite 2000
Detroit, MI 48226
(313) 964-9019 (direct dial)
bjeffers@hhbjlaw.com

DATED:        August 31, 2017

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

APRIL ADRIANA FOX,

          Plaintiff,                Case No. 16-cv-01467
                                       Hon. Robert J. Jonker

vs.

BLUE CROSS BLUE SHIELD OF
MICHIGAN LONG TERM DISABILITY
PROGRAM,

          Defendant.

| | |
|---|---|
| TIMOTHY A. O'ROURKE, PLLC | HICKEY HAUCK BISHOFF & JEFFERS, PLLC |
| Timothy A. O'Rourke (P32443) | Benjamin W. Jeffers (P57161) |
| Attorney for Plaintiff | Attorneys for Defendant |
| 422 W. Lenawee | One Woodward Ave., Suite 2000 |
| Lansing, MI 48933 | Detroit, MI 48226 |
| 517.372.2900 | (313) 964-9019 |
| | bjeffers@hhbjlaw.com |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR JUDGMENT BASED ON ADMINISTRATIVE RECORD**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

ISSUES PRESENTED ...................................................................................... iv

I.     INTRODUCTION .................................................................................1

II.    BACKGROUND ...................................................................................2

    A.    The parties and the basics of Fox's claim. ............................................2

    B.    Plaintiff's burden of proof under the Program documents. ..................4

    C.    The Program administrators conducted three internal reviews of Plaintiff's claim. ...............................................................................5

III.   STANDARD OF REVIEW ...........................................................................8

IV.   ARGUMENT...................................................................................9

    A.    The Decision-Making Was Thorough, Transparent, And Consistent With All Program Requirements.........................................................10

    B.    The Administrative Record Does Not Support Plaintiff's Position....12

    C.    Plaintiff's Arguments Are Unavailing. ...............................................16

        1.    Plaintiff's treating physician, Dr. Robert L. McElmurry, is an outlier. ......................................................................................17

        2.    The Program did not dictate treatment. ....................................18

V.   CONCLUSON...................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Black & Decker Disability Plan v. Nord*,
 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) ...................................................... 18

*Blount v. United of Omaha Life Ins. Co.*, 2016 WL 4191725 (M.D. Tenn., August 8, 2016) . 9, 20

*Davis By & Through Farmers Bank & Capital Trust Co. of Frankfort, Ky. v. Ky. Fin. Cos.
 Retirement Plan*, 887 F.2d 689 (6th Cir. 1989 .......................................................................... 8

*Firestone Tire & Rubber Co. v. Bruch*,
 489 U.S. 101 (1989) ..................................................................................................................... 8

*Gismondi v. United Techs. Corp.*,
 408 F.3d 295 (6th Cir. 2005)........................................................................................................ 18

*Huffaker v. Metropolitan Life Ins. Co.*,
 271 Fed.Appx. 493 (6th Cir. 2008) ........................................................................................ 9, 18

*Marks v. Newcourt Credit Grp., Inc.*,
 342 F.3d 444  (6th Cir. 2003)........................................................................................................ 8

*McClain v. Eaton Corp. Disability Plan*,
 740 F.3d 1059 (6th Cir. 2014)....................................................................................................... 8

*McDonald v. W.-S. Life Ins. Co.*,
 347 F.3d 161 (6th Cir. 2003)..................................................................................................... 9, 16

*Miller v. Metro. Life Ins. Co.*,
 925 F.2d 979 (6th Cir. 1991)......................................................................................................... 8

*Morgan v. SKF USA, Inc.*,
 385 F.3d 989 (6th Cir. 2004)....................................................................................................... 18

*Pokratz v. Jones Dairy Farm*,
 771 F.2d 206 (7th Cir. 1985)......................................................................................................... 8

*Schwalm v. Guardian Life Ins. Co. of Am.*,
 626 F.3d 299 (6th Cir. 2010)......................................................................................................... 9

*Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*,
 203 F.3d 926 (6th Cir. 2000)......................................................................................................... 8

*Spangler v. Lockheed Martin Energy Sys., Inc.*,
    F3d 356 (6th Cir. 2002) .................................................................. 20

*Whitaker v. Harford Life and Acc. Ins. Co.*,
    404 F.3d 947 (6th Cir. 2005) ........................................................ 18

*Wilkins v. Baptist Healthcare Systems, Inc.*,
    150 F.3d 609 (6th Cir. 1998) .......................................................... 7

*Wooden v. Alcoa, Inc.*,
    511 Fed.Appx. 477 (6th Cir. 2013) ............................................... 18

**STATUTES**

29 U.S.C. § 1132 ................................................................................ 1

**ISSUES PRESENTED**

Should the Court enter judgment in Defendant's favor on an ERISA program's denial of benefits where there was an exhaustive review of medical records and other information, the disability claim is premised largely on subjective, self-reported symptoms that are not supported by physician evaluations and objective evidence, and the Plaintiff was given the benefit of the doubt throughout the internal appeal process?

**Plaintiff answers:** **No**

**Defendant answers:** **Yes**

## I.      INTRODUCTION

This is an action under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 *et seq*. ("ERISA") to challenge a denial of long term disability benefits. Plaintiff April Fox ("Plaintiff" or "Fox") stopped working in early 2013 from non-party Blue Cross Blue Shield of Michigan ("BCBSM"), claiming a disability due to migraines and fibromyalgia.  The applicable LTD program initially began paying monthly disability benefits based on limited information, and did so subject to the receipt of additional data to support the claim.  Plaintiff had the burden to persuade the program decision-makers through objective medical evidence that she had a disabling mental or physical condition that prevented her from working in her job.

After multiple internal reviews that considered extensive medical records and the opinions or treatment of approximately twenty medical professionals, the program ultimately concluded that Plaintiff had failed to satisfy her burden of proof. Her history of self-reporting vague symptoms of pain and other health problems, simply did not establish that these issues constituted a disability that prevented her from working at her job as a Customer Service Representative for BCBSM.  The job entailed answering phone calls and processing customer inquiries. Indeed, her migraines date back to 2001, when she first began to work at BCBSM, and more than a decade before she claimed to be disabled. And she did not prove that any purported changes in her medical history and alleged increases in her pain as of 2013 were attributable to a disability. According to the reviewing physicians, Plaintiff had developed a serious opioid dependency as of 2013 and the opioids themselves caused many of the symptoms that Plaintiff claimed were debilitating. At the very least, the massive amounts of narcotics that her treating physician was injecting her with for years made it impossible for her to prove that her symptoms

1

were the result of underlying, and debilitating medical conditions. Plaintiff's physician, who administered these injections, is alone among physicians in opining that she is disabled.

The Court's role is to determine whether the benefit denial was arbitrary and capricious in light of the overall administrative record and Plaintiff's burden of proof. This standard of review does not permit the Court to undertake a *de novo* factual inquiry, nor to decide whether it would have reached a different result had it been in the program administrator's shoes during the three internal reviews. Viewed through the lens of this standard of review and in relation to Plaintiff's underlying burden of proof, it is clear that Plaintiff cannot prevail in this case. The program administrators looked at all the objective medical evidence and made a rational decision in light of the program requirements. That Plaintiff disagrees with the conclusions they reached merely establishes that reasonable people can disagree on this issue. But pointing out the existence of that disagreement does not satisfy Plaintiff's burden.

For these reasons, the Court should grant Defendant's Motion for Judgment on the Administrative Record.

## II.    BACKGROUND

In the following section, we identify the parties and Fox's claim, summarize Fox's burden of proof under the applicable Program documents, and explain the basic procedural history.[1]

### A.    The parties and the basics of Fox's claim.

Plaintiff worked for non-party Blue Cross Blue Shield of Michigan from May 14, 2001, through January 7, 2013. *See* Ex. A, LTD-2 Form, FOX_AR_000516 - 000523. She was a

---

[1] On the record at the status conference on March 13, 2017, Defendants requested that the Administrative Record be filed under seal. The Court denied the request, and Plaintiff herself has not moved for any similar relief. Thus, although Defendants have redacted personal identifying information from documents, the Administrative Record is otherwise being lodged in the ordinary course, including documents attached to this Motion, as ordered by the Court.

Customer Service Representative, with job duties she described as taking inquiries by phone, working on the computer, and handling customer service inquiries. *Id*. at p.4.

Defendant is the Blue Cross Blue Shield of Michigan LTD Program. For purposes of this lawsuit, Defendant assumed the rights and liabilities of a LTD program called the Blue Cross Blue Shield *Association* LTD Program ("Program"), of which BCBSM participated through the end of 2016. The Program administered LTD benefits for employees of multiple "Blues" entities throughout the Country, including for BCBSM employees like Ms. Fox. The Program was a self-funded arrangement.

Claiming a disability due to migraines and fibromyalgia pain, Plaintiff stopped working at BCBSM as of January 7, 2013, and then applied for long term disability benefits in June 2013.[2] *See* Ex. B, May 23, 2016, Final Denial Letter, p. 1, FOX_AR_000267-000285 ("Final Letter"). The Program initially approved her request for disability status for a period commencing July 1, 2013, subject to receipt of supporting medical information. *Id*., and Ex. C, October 7, 2013, Letter, FOX_AR_006414-006419. The Program determined that Fox had monthly earnings of $4,152.17 when she stopped working, and a 60% benefit level, for a monthly gross LTD benefit of $2,491.30. Ex. C, October 7, 2013, Letter, FOX_AR_006416. The Program began paying her this benefit amount. Subsequently, as explained below in more detail, the Program decided to discontinue benefits after finding that she could not satisfy her continuing burden to prove a disability.

---

[2] Fox is under the age of forty (40), and so the value of the claim on a going forward basis could be substantial. But the question before the Court is the threshold claim denial decision, not what amount Fox theoretically could receive at any point if the decision were reversed. Obviously, the question of benefit amounts is mooted if the denial is upheld and, in any event, the precise benefit amount that a claimant may receive will vary depending upon a number of factors, including whether they have Social Security Disability benefits, work status, age, availability of a pension, and when they began work with their employer. Ex. E, Summary Description, pp. 84-85, FOX_AR_000096-000134.

Ms. Fox's former employer (BCBSM) did not take part in the decision-making process. Rather, claim decisions were made by representatives working on behalf of the Association's National Employee Benefits Committee ("NEBC"), which served as the ERISA program administrator and named fiduciary for employee benefit programs of the independent Blues companies that elect to utilize the manager services offered by the Association through the National Benefits Administration Department ("NEBA"). Cooney Dec., Ex. D, FOX_AR_007338-7353. The Administrative Record on internal appeals ("Fox AR") was developed and compiled by individuals working on behalf of the NEBC. *Id*.

**B.**     **Plaintiff's burden of proof under the Program documents.**

Section 3.1 of the LTD Program documents provide that a participant must convince the Program with "objective medical evidence" that he or she is unable to perform work up to the applicable Disability standard. Ex. F, Program Documents, ¶3.1 p. 11, FOX_AR_000001 - 000068. Under the default Disability standard, a participant "must establish to the satisfaction of NEBA or NEBC, as the case may be, that he or she is wholly prevented, by reason of mental of physical disability, from engaging in any occupation comparable to the occupation in which he or she was engaged for the Participating Employer at the time of, or immediately prior to the claimed onset of his or her Disability." Ex. F, Program Documents, ¶3.1(a) p. 11, FOX_AR_000001-000068.

The participant's burden is amplified and further explained in Section 3.2 of the Program documents. Ex. F, ¶3.2 p. 13. Section 3.2 initially explains again that, overall and generally, the participant has the general burden of proof. *Id*. at ¶3.2(a). And then specifically, the participant has the burden to persuade the Program through objective medical and other evidence that (i) he or she has a disabling mental or physical condition, (ii) he or she cannot perform work described in the applicable performance or occupational standard, and (iii) there is a causal connection

4

between the claimed disability and their inability to work. Ex. F, ¶3.2(b)(i-iii), p. 14.  The burden

of proof in the applicable Program documents routinely was highlighted for Fox and her counsel

during the appeal process. *See e.g.*, Ex. B, Final Letter, pp.16-18 (citing to the "Relevant

Program Provisions").

Finally, a claimant's burden of proof as to any disabled status is continuing even if the

Program initially accepts a claim.  Under Section 4.2(c)(iv), if NEBA or NEBC, as the case may

be, determines that the participant is no longer disabled or is otherwise eligible for benefits, all

further benefits shall cease effect with the first day of the month in which they made such a

determination. Ex. F, Program Documents, ¶4.2(c)(iv), p. __, FOX_AR_000001-000068.

### C. The Program administrators conducted three internal reviews of Plaintiff's claim.

After the initial decision in the Summer of 2013 to pay disability benefits, which gave her

the benefit of the doubt based on limited data, the Medical Review Committee ("MRC") began

to review additional medical records and other information to evaluate a continued determination

of a disability.  Ex. B, Final Letter.  As of February 5, 2014, the MRC believed Fox's conditions

should be treatable and that she could return to work. *Id*; Ex. G, February 5, 2014 MRC Letter,

FOX_ AR_006374-006383. The medical evidence did not support a disability determination for

migraines and fibromyalgia. *Id*.

A source of concern, however, was information indicating that Fox had a serious problem

with opioids. Ex. G, February 5, 2014 MRC Letter, FOX_AR_006374-006383. For years she

had been receiving Demerol or Nubain injections multiple times a week, along with oral doses of

Vicodin and Norco. *Id*. p. 2, Ex. H, FOX_AR_006310 (showing 126 Demerol and Phenergan

injections just from April 2014 through September 2015, and 99 Nubain and Phenergan

injections from April 2015 through March 2016). This substantial history of opioid use begged

the medical question of whether that itself caused the pain conditions that plaintiff claimed prevented her from working and not migraines or fibromyalgia, which she claimed was her "disability." As noted above, the record did not support finding a disability, but the MRC nonetheless advised her that it would continue her disability status through May 31, 2014, and then would consider maintaining benefits thereafter if she participated in an opioid detoxification program that would allow the professionals to rule out opioid dependency as the cause of her alleged condition. *Id.*; see also Ex. B, Final Letter.

Fox refused to attend a detoxification program and thereby prevented the MRC from assessing the impact of her chronic opioid use (not to mention to improve her health). The MRC maintained her disability status and paid her until May 31, 2014, but then denied the determination going forward. The rational for the MRC's decision was set forth in a twenty-one (21) page letter that summarized the record as of that date. Ex. H, June 12, 2014, MRC Denial Letter, FOX_AR_006309-006329. The MRC concluded that with the exception of her opioid dependence, the medical evidence did not support a disabled status as to migraines and fibromyalgia. *Id.*, and Ex. B, Final Letter.

Fox appealed the MRC decision via a letter dated December 12, 2014, to the Program's Claims Appeal Committee ("CAC"). Ex. I, December 12, 2014 O'Rourke Letter, FOX_AR_004577-004580. The CAC evaluated all of the information reviewed by the MRC, as well as updated records, the opinions of three additional Board-certified physicians who examined Fox, video surveillance, and new material submitted by Fox in her December 2014, letter. The CAC upheld the denial determination in a nine-page (9) letter dated May 15, 2015. Ex. J, May 15, 2015, CAC Denial Letter, FOX_AR_006299-006308. The CAC likewise concluded that the medical evidence did not support a disability determination. *Id.* The basis of

the decision was on the record, and not in reaction to Fox's decision to decline opioid detoxification treatment. *Id*, p. 5, FOX_AR_006303 ("The MRC noted, and the CAC concurs, that there was nothing in the records, evaluations and objective diagnostics from the treating physicians to reflect any underlying condition of sufficient severity to result in disability."). The CAC noted, for example, physician opinion's that her "complaints are largely subjective and based on her history as self-reported." *Id*., p. 2.

Fox initiated her second appeal in a letter dated November 10, 2015, to the NEBC Assistant Secretary, who is responsible for final appeals. Ex. K, Final Letter, p. 4, FOX_AR_003789-003794. Fox then submitted even more information and medical reports in connection with that appeal. Ex. K, Final Letter, p. 2. The NEBC Ass't Secretary (Sharon L. Keyes, R.N., M.S.) likewise elicited even more data as well, including yet another peer review by a board-certified physician and a vocational assessment report. *Id*. The Ass't Secretary affirmed the denial and issued a 19-page letter that outlined the entire history of Fox's claim, summarized the basis for the MRC denial, summarized the basis for the CAC denial, identified all of the medical evidence that had been received and reviewed, and rebutted the various arguments that Fox's counsel had lodged in his previous correspondence. *Id*. The Final Letter is the roadmap for the Program's decision.

Ms. Fox filed suit on December 29, 2016, apparently based on Section 502(a) of ERISA. Complaint, Doc #1. The sole claim is for denial of benefits. *Id*. The parties obtained and exchanged the FOX AR and the Court set a briefing schedule. The "parties agree that *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609 (6th Cir. 1998) applies and that the matter will be determined upon submission of cross motions for judgment on the record." Joint Status Report, Doc. #9, Pg. ID 24.

There are no threshold or procedural issues for the Court to consider. Thus, this matter is ripe for a decision on the merits.

## III.    STANDARD OF REVIEW

A denial of benefits challenged under ERISA is subject to the arbitrary and capricious standard where, as here, the benefits program gives the administrator discretionary authority in interpreting the program. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991) (citing *Firestone*, 489 U.S. at 115). The applicable Program documents here grant the Program administrators complete discretion. In fact, this point is emphasized repeatedly. Ex. F, Program Documents, ¶1.4 p. 3, (section regarding "Administration") and ¶6.5 p. 48 (section regarding "Claims Process"), FOX_AR_000001-000068; *see also* Ex. E, Summary Description, p., 8 ("Participant Obligations"), FOX_AR_000096-000134.

"The arbitrary or capricious standard is the least demanding form of judicial review of administrative action." *Davis By & Through Farmers Bank & Capital Trust Co. of Frankfort, Ky. v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)). Under this standard, the determination of an administrator will be upheld if it is "rational in light of the plan's provision." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457 (6th Cir. 2003)). This means that a claim administrator's decision is not arbitrary and capricious if it "is based on a reasonable interpretation of the plan." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933-34 (6th Cir. 2000). Moreover, a "decision reviewed according to the arbitrary and capricious standard must be upheld if it results from a deliberate principled reasoning process and is supported by substantial evidence." *McClain*, 740 F.3d at 1064. (quoting *Schwalm v.*

8

*Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (internal quotation marks omitted). The Court must review "the quantity and quality of the medical evidence and the opinions on both sides of the issue" to determine whether a reasoned explanation exists to support an administrator's decision. *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

What this means in practice is that this lawsuit is not meant to be a re-do of the Program's decision-making, but rather a check on the process that led to it. The idea is not to give Fox a shot at changing the decision merely by changing the decision-maker. Rather she must prove that something went awry in the appeal process. And the standard does not require that the Court personally agree with all of the factual support for the decision in order to uphold it. One could conclude that he or she would have weighed facts differently had they been in Program administrators' place, yet likewise conclude that Fox has failed to prove the decision is arbitrary and capricious. That is because reasonable minds can differ relative to a decision, and yet neither side's viewpoint is so deficient as to be deemed "arbitrary and capricious" and contrary to law.

## IV. ARGUMENT

ERISA program document provisions that place the burden on the claimant to prove the existence of a disability based on objective medical evidence are legitimate and enforced by courts. Indeed, courts affirm claim denials where the claimant's symptoms are subjective and self-reported and yet there is an absence of objective, supporting medical support. *See e.g.*, *Huffaker v. Metropolitan Life Ins. Co.*, 271 Fed.Appx. 493 (6th Cir. 2008) (denial of claim based fibromyalgia symptoms was not arbitrary and capricious where the claimant failed to persuade the plan with objective medical evidence); *Blount v. United of Omaha Life Ins. Co.*, 2016 WL 4191725, *5 (M.D. Tenn., August 8, 2016) (affirming denial where claimant's record did not

establish objective proof of a disability based on a lupus diagnosis and instead, several physicians believed that her symptoms were potentially linked to "aggressive opioid use"). That is the situation we have here; as explained below, Fox reported symptoms of pain due to migraines and fibromyalgia, but failed to carry her burden of providing persuasive objective proof that these conditions prevented her from working as a Customer Service Representative or in a comparably compensated position.

The issues are addressed in three sections. First, in Section IV(A), we demonstrate that the Program's decision-making was thorough and that Fox was given every benefit of the doubt in this process. Next, in Section IV(B), we highlight how the record overwhelmingly undercuts Fox's claim that she is disabled due to migraines and fibromyalgia. And finally, in Section IV(C), we explain the fallacy of her arguments that the Program erred by not accepting the opinion of her treating physician and by allegedly trying to "dictate" treatment.

### A. The Decision-Making Was Thorough, Transparent, And Consistent With All Program Requirements.

The Program administrators afforded Fox all of her rights under the appeal process and she fully availed herself of the opportunities, resulting in an extraordinarily fulsome record. Ex. B, Final Letter. The FOX_AR itself consists of 7,353 pages of documents, taking up two bankers boxes when printed. It includes medical records from physicians that treated or consulted with Fox, IME and file review reports, numerous letters between the Program and Fox or her attorney, diagnostic and lab reports, physician notes, correspondence from Fox's primary treating physician, video surveillance, and a vocational assessment report. *See* Final Letter, and FOX_AR. And the Program made its final decision only after considering opinions or materials gleaned from twenty-one (21) medical professionals. This included her treating physician, Dr. L. Robert McElmurry, plus information from twelve (12) specialists who evaluated Ms. Fox from

2011 through 2015. Ex. B, Final Letter, pp 7-12. Additionally, the Program considered the opinions of three (3) physicians who conducted independent medical examinations ("IMEs") of Fox personally, and then five (5) additional file reviews by other physicians, all in connection with her LTD claim. *Id.* The IMEs and file reviews were conducted by specialists in occupational medicine, neurology, forensic and addiction psychiatry, rehabilitation, musculoskeletal, and pain medicine. *Id.*

And there is no dispute that Program decision-makers drilled into the FOX_AR in considerable detail. The MRC, CAC and Ass't Secretary decisions all highlight nuanced details that could be discerned only upon an exhaustive review of the underlying materials. Just by way of example, the Final Letter articulates the concerns of physicians that Fox's real problems could arise from her opioid dependency, and in that regard, it lists each date that Fox's treating physician (Dr. McElmurry) gave her injections of Demerol and Phenergan or Nubain and Phenergan from April 2014 through March 2016. Ex. B, p. 5 (noting 126 injections of Demerol and 99 injections of Nubain). The Program administrators looked at this matter backward and forward.

It likewise is beyond dispute that the Program considered evidence that Fox herself submitted. This was not a one-time event; rather, at each stage of the appeal process, she supplied new materials that the Program accepted and reviewed. Ex. H, MRC Denial Letter, ("You also submitted additional materials, which the MRC reviewed"); Ex. J, CAC Denial Letter, pp. 2-3 (identifying new information she submitted after the MRC denial and in relation to her appeal to the CAC); and Ex. B, Final Letter, p 4 (noting that with final appeal she submitted a new letter from Dr. McElmurry, and additional and updated medical records).

11

Finally, the Program was transparent about what it reviewed and considered. Program representatives sent her the file material they gathered, and her attorney had the opportunity - of which he repeatedly availed himself - to comment on the evidence during the appeal process. *See* Exs. H, J, and B (MRC, CAC, and Final Letter); *see also*, Ltrs from Fox's attorney (FOX_AR_004577-004580; FOX_AR_003643-003644; FOX_AR_003683; and FOX_AR-003789-003794).

In sum, this is not a case where Fox credibly could argue the Program failed to follow its process, declined to consider evidence, or made the decision in haste based on incomplete data. Plaintiff is therefore left with the uphill climb of arguing the ultimate merits of the decision itself was arbitrary and capricious- in other words, it is not rational based on the program document's provisions. As described in more detail below, Plaintiff cannot meet this burden.

**B.** **The Administrative Record Does Not Support Plaintiff's Position.**

Plaintiff had the burden to establish through objective evidence that she was unable to work due to debilitating migraines and fibromyalgia. With the lone exception of her treating physician's opinion (discussed in Section IV(C), *supra*), there is virtually no evidence in the record to support her position.

The crux of Plaintiff's claimed disability – pain – is based on subjective and self-reported symptoms. That means that physicians necessarily must look beyond her own characterization to discern the existence of an underlying disability. Here, no one disputes that she presented to various physicians over the years with various pain-related symptoms. *See e.g.,* Ex. L, Dr. Seidel Evaluation, December 5, 2013, FOX_AR_006622-006633. Yet conditions associated with chronic and debilitating pain *are knowable* to experts in the field, and in this instance, there was insufficient objective evidence to find a disability due to migraines and fibromyalgia.

A prime example is the opinion of Dr. Paola M. P. Seidel, M.D., FAAPRM, an assistant professor at Wayne State University and a specialist in musculoskeletal medicine. Dr. Seidel conducted a thorough physical evaluation of Fox and of her medical records in December 2013 in relation to the fibromyalgia claim. Ex. L, Dr. Seidel Evaluation, December 5, 2013, FOX_AR_006622-006633. Dr. Seidel's examination revealed a fundamental disconnect between Fox's claimed symptoms and a true diagnosis of fibromyalgia. Dr. Seidel states in the report as follows:

> She also doesn't present with a clinical picture consistent with fibromyalgia. Fibromyalgia is a condition characterized by multiple tender points and is often accompanied by skin fold tenderness, cutaneious hyperemia, reticular skin discoloration, abnormal sleep patterns, fatigue and IBS. It does NOT present with the total body pain noted in this diffuse fashion. *** The degree of pressure to illicit painful symptoms in Ms. Fox was much lighter than is typical in cases of fibromyalgia. Light touch does not illicit pain in patients manifesting symptoms of this syndrome. *** Ms. Fox's complaints present much more diffusely and include tissues not consistent with this diagnosis.

Ex. L, Dr. Seidel Evaluation, pp 11-12. And contrary to the assertion that Fox cannot work or be active, Dr. Seidel determined that increased physical activity was precisely what Fox needed and that it was achievable. *Id.*, p. 12 ("It should be emphasized that while she may experience complaints of pain, she is physically capable of much greater activity and must work to both preserve and improve her function").

Two other physicians likewise conducted IMEs and did not find a disability but instead discovered an unfortunate fact – that Fox's own physician had been treating her inappropriately with unnecessary opioids that caused many of the issues of which Fox complained. One was Dr. Norman S. Miller, M.D., a forensic addiction psychiatrist, who conducted a physical examination of Fox in September 2013. He also considered her medication history, and noted her use of Meloxicam, Cymbalta, Ambien, Amitriptyline, Vicodin, Flovent, Benadryl, and Demerol. Ex.

M, Miller Evaluation, September 20, 2013, p.4, FOX_AR_006894-006899. He determined that Fox suffered from opioid dependence and, more importantly, that specific medications Fox takes **actually induce hyperalgesia**, which is the heightened sensitivity to pain. *Id*. at p. 6. He opined that if she were to detoxify her mood would improve, her pain would decrease, migraine frequency would assume a tolerable level, and she could work. *Id*.

A third IME by a board-eligible specialist in occupational medicine is consistent with these findings. Dr. Charles Syrjamaki, M.D., did a physical examination and likewise was alarmed by her medication history, including that she received Demerol and Phenergan injections on the average of 4 times a week for years. Ex. N, Syrjamaki Evaluation, March 25, 2013, FOX_AR_007112-007115. Dr. Syrjamaki opined that the "major problems Ms. Fox has at this time are headaches related to her overmedication, especially the use of narcotics." *Id*., p. 3. He found that Fox's treating physician's (Dr. McElmurry) practice of giving Fox parenteral narcotic injections was "extremely inappropriate" and that but-for her drug dependence, her headaches would resolve. *Id*. The problem, according to Dr. Syrjamaki, is that such medications create what is called a "rebound headache." *Id*. Dr. Syrjamaki was so alarmed that he expressly opined that Fox should no longer treat with Dr. McElmurry at all. *Id*., p. 4. But regardless, Dr. Syrjamaki believed that Fox should be weaned off her drug dependency and is fully capable of doing her job as a customer service representative. *Id*.

Of note, the Program has an exclusion for any disabilities due to "illegal drugs usage (*i.e*., wrongful use of illegal drugs, prescription drugs or controlled substances)." Ex. E, Summary Description, p., 8 ("Exclusions"), FOX_AR_000096-000134). Here, although the Program denied the claim based on Plaintiff's failure to satisfy her burden to show a disability in the first place (*see* Final Letter), clearly this exclusion ultimately could have been salient too given her

history of using prescription narcotics that were not medically necessary for her claimed problems.

Additionally, multiple experts who reviewed her file in connection with the Program claim review process concurred that she was not disabled, regardless of whether her symptoms were related to opioid usage or not:

- Dr. Cathy Helgason, M.D., a board-certified specialist in neurology, reviewed Fox's file in July 2013, and also communicated directly with Fox's treating physician. Ex. O, Helgason Evaluation, July 22, 2013, FOX_AR_007051-007055. She opined that without neurologic deficit and with twice a week migraines, Fox does not have an impairment in her ability to perform her core employment duties. *Id.* She likewise believed that an underlying cause of the migraines was "rebound headaches" due to inappropriate prescriptions. *Id.*

- Dr. Gilberto Munoz, M.D., M.P.H., a specialist in environmental and occupational medicine, and professor at the University of Illinois, reviewed Fox's file and spoke with a rheumatologist who had been treating her. Ex. P, Munoz Evaluation, July 22, 2013, FOX_AR_006904. Dr. Munoz initially did his review in September 2013, but also considered new video evidence of Fox in June 2014. He concluded that based on the medical evidence to date, as well as the video evidence showing Fox walking and driving normally, there is insufficient medical evidence to support severity of symptoms. *Id.*

- Dr. Howard S. Konowitz, M.D., a board-certified musculoskeletal specialist evaluated Fox's entire file as of April 2014. Ex. Q, Konowitz Evaluation, July 22, 2013, FOX_AR_006822-006832. After reviewing all of her history and symptoms, he opined that there was no compelling evidence of a medical impairments that would prevent her from carrying out daily living activities and to sustain employment. In fact, he concluded that returning to work and receiving counseling and detoxification might improve Fox's progress. Id.

- Michael L. Fox, D.O., FASM, Medical Director of the Dependency Unit at St. Mary Mercy Hospital in Detroit, reviewed Fox' file in February 2015. Ex. R, Fox Evaluation, July 22, 2013, FOX_AR_004229-004239. He looked at everything gathered to date, and noted no medical impairments beyond Fox's subjective complaints of pain. He likewise noted that to feel better, Fox needed to stop her intake of narcotics. *Id.*

These opinions were noted by the Program upon making the final denial decision. Ex. B, Final Letter. The Program likewise evaluated the records and any opinions from the various specialists who had treated or seen Fox over the years. *Id.*, pp. 7-9. Of these latter twelve

professionals, which included specialists in many disciplines, only one expressed an opinion that Fox was disabled. That individual was John McPhail, M.A., L.P.C., who is <u>not</u> a physician, but a counselor who apparently saw her "several times" and concluded that she was severely debilitated and limited in carrying out significant cognitive tasks. *Id*., p. 8. The NEBC Assistant Secretary noted that there no notes or treatment records to support Mr. McPhail's views. *Id*.

Finally, given Plaintiff's burden to prove she cannot work in a comparably compensated occupation even aside from her previous job, the Program solicited the opinions of a vocational expert who conducted a "Transfer Skills Analysis Wage Earning Capacity Evaluation." *See* Ex. B, May 6, 2016, Report, FOX AR 286-294. The vocational assessment concluded that her position at BCBSM was classified as "sedentary" work involving low physical exertion with only brief periods of standing. *Id*., p. 2. The report identified comparable types of positions, as well as specific jobs available as of June 1, 2014, and again as of June 1, 2016. *Id*.

Based on this record, there can be no dispute that a "reasoned explanation" exists for the Program's decision. *McDonald v. W.-S. Life Ins. Co*., 347 F.3d 161, 172 (6th Cir. 2003) (decision not arbitrary and capricious if a reasoned explanation exists to support it). Indeed, with the exception of the opinion of Dr. McElmurry (discussed below) the Fox Administrative Record is virtually devoid of any objective medical evidence to support Fox's argument that she is medically disabled due to migraines and fibromyalgia. At best, she has had ongoing, but manageable, headaches and other pain-related symptoms that do not prevent her from working. And even so, there is a strong medical consensus among the physicians that have treated and/or reviewed her history that her primary medical concern is opioid dependency.

### C. **Plaintiff's Arguments Are Unavailing.**

Plaintiff contends primarily that the Program erred by (1) failing to accept the opinions of Dr. McElmurry, and (2) supposedly seeking to require her to attend detoxification treatment.

16

Neither argument is accurate, nor establishes that she carried her overall burden of proof in any event.

### 1. Plaintiff's treating physician, Dr. Robert L. McElmurry, is an outlier.

Dr. McElmurry treated Plaintiff for an extended period of time, and coordinated her overall care. And that may be part of the problem. As noted above, several physicians independently concluded that Fox is dependent on the narcotics Dr. McElmurry prescribed or injects, that the drugs are not appropriate as treatment for the conditions of which Fox complains and, in fact, that the drugs themselves likely are causing heightened sensitivity to pain. Even worse, the Program administrators discerned that Dr. McElmurry unfortunately did not consider Demerol to be an opioid, despite the obvious medical consensus to the contrary. Ex. B, Final Letter, p. 5, citing FDA findings. These facts alone provide a reasonable basis for the Program to decline to accept at face value his opinion of a "disability."

Nonetheless, the Program went above and beyond in attempting to consider Dr. McElmurry's treatment and his opinions. After the CAC had denied Fox's appeal of the MRC decision, the NEBC Assistant Secretary retained yet another physician to conduct one last evaluation and to review Dr. McElmurry's records page-by-page. Ex. B, Final Letter, p. 12-14. Dr. David Hoenig, M.D., who is board certified in Psychiatry and Neurology, reviewed Fox's entire file in April 2016, spoke with Dr. McElmurry on the telephone, and considered additional information that Fox's attorney supplied at that time. *Id*., p. 12. Dr. Hoenig concluded that, from a neurological perspective, there was no objective medical evidence to support a finding that Fox could not sustain employment. Ex. S, Hoenig Evaluation, FOX_AR_000460-000498. He also went through Dr. McElmurry's progress notes page-by-page to try and understand his treatment and views. The notes often were difficult to read, or were so rudimentary as to be meaningless. For example, Dr. Hoenig found that for months on end until June 2014, Dr. McElmurry's "plan"

was simply to administer intramuscular Demerol and Phenergan injections for migraines and fibromyalgia. Ex. B, Final Letter, p. 4. Put simply, nothing in Dr. McElmurry's notes shed light on, or otherwise support, the view that Fox is truly disabled. The Program was within its rights to question Dr. McElmurry's views in light all of this.

But even if his treatment had been appropriate and his record-keeping sound, it was not arbitrary and capricious to reject Dr. McElmurry's opinion. It is settled that ERISA plans are not bound by the opinions of a participant's treating physician. *Whitaker v. Harford Life and Acc. Ins. Co.*, 404 F.3d 947 (6th Cir. 2005) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). They may instead rely on physician opinions retained to conduct examinations, even when those physicians disagree as to the existence of a disability. *Huffaker v. Metropolitan Life Ins. Co*., 271 Fed.Appx. 493 (6th Cir. 2008) (not arbitrary and capricious for plan to rely on opinions other than the treating physician); *Wooden v. Alcoa, Inc*., 511 Fed.Appx. 477 (6th Cir. 2013) (proper to credit the opinions of multiple physicians over the plaintiff's treating physician in denying a claim). This is consistent with the principle that a court must accept an administrator's rational decision, if it is not arbitrary or capricious, even in the face of an equally rational interpretation of a plan offered by a participant. *Gismondi v. United Techs. Corp*., 408 F.3d 295, 298 (6th Cir. 2005) (citing *Morgan v. SKF USA, Inc*., 385 F.3d 989, 992 (6th Cir. 2004)). Here, the fact that Dr. McElmurry was the lone physician to opine as to a disability in the face of overwhelming contrary evidence is a sufficient and legitimate reason to reject his opinion.

### 2. The Program did not dictate treatment.

Plaintiff also argues that the Program erred by allegedly seeking to link future disability benefits to her attending a detoxification program. She asserts that the Program must simply

determine whether a disability exists based on the information presented to it, and not tell her what treatment she should be receiving.

This argument is a red herring. It misconstrues what the Program was seeking to accomplish when recommending drug treatment, but fails in any event to address the fundamental problem here, which is that Fox did not carry her burden of proving through objective medical evidence that she was disabled due to migraines and fibromyalgia. Both points are discussed below.

The MRC concluded as of February 5, 2014, that the record did not support a continued finding of a disability. Ex. G, February 5, 2014 MRC Letter, FOX_AR_006374-006383. But it also noted the obvious – that physicians had determined that Fox's drug dependency was the cause of certain pain symptoms in the first place. *Id*. To give her the benefit of the doubt, the Program initially advised that she should attend detoxification and said it would reevaluate her status following such treatment. *Id*. Clearly, the goal was to allow the Program to gather additional information from which it could make decisions; this is exactly what it is allowed to do and does do, in fact, when seeking IMEs and file reviews. Yet, Fox now conflates the notion of "dictating" treatment for her symptoms with seeking to determine whether detoxification would alleviate those symptoms, and thereby help reveal (or not) the existence of a certain medical conditions in the first place. Fox chose not to attend detoxification. That was her prerogative. But there was nothing wrong with the Program reacting to information about her drug dependency and seeking to further understand it in the overall assessment. *See e.g*., Ex. E, Summary Description, p., 8 ("Participant Obligations"), FOX_AR_000096-000134 (noting, among other things, that participants must "cooperate fully in undergoing or submitting to tests or examinations requested by the Program Administrator").

She also ignores two fundamental points by focusing on this issue at the MRC level. First, she sidesteps the fact that regardless of the detoxification recommendation, the overall record did not support a finding of a disability when the MRC made its decision in the Spring of 2014. Put differently, if the MRC's detoxification recommendation never happened, that does not mean Plaintiff would have somehow carried her burden of proof. The overall record as described above makes that clear. The detoxification recommendation was meant as a further diagnostic tool under the circumstances; but take it away and one is still left with a record that does not support Fox.

Second, she ignores that the *final* appellate decision had nothing to do with whether she attended detoxification or not. The ultimate issue in an ERISA denial case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether the ultimate decision denying benefits was arbitrary and capricious. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, F3d 356, 362 (6th Cir. 2002) (reversal of denial was justified based on the overall record and not simply on the specific flaw of failing to provide the file reviewer with all material information); *Blount v. United of Omaha Life Ins. Co.*, 2016 WL 4191725, *5 (M.D. Tenn., August 8, 2016) (citing *Spangler* and rejecting notion that plan administrator was required to have different or more specific language in its plan when the overall record supported the denial). Here, following the MRC, the first appeal decision at the CAC was based on the overall record and the fact that Fox failed to carry her burden, not in reaction to Fox's decision to decline detox treatment. Ex. J, May 15, 2015, CAC Denial Letter, FOX_AR_006299-006308. The same is true with the second, and final determination by the NEBC Assistant Secretary. Ex. B, Final Letter. And neither was a proverbial "rubber stamp," such that one credibly could argue that they perpetuated some perceived error by the MRC. To the contrary, both the CAC and the

Assistant Secretary considered additional evidence that had been gathered after the MRC made its initial decision. *Id*. For all of these reasons, the Court should reject Fox's argument premised on the notion that the Program sought to "dictate" treatment.

## V.    CONCLUSION

Plaintiff cannot satisfy her burden of showing that the Program administrator's decision was arbitrary and capricious given the Administrative Record in this case. The Court should enter judgment in Defendant's favor.

Respectfully submitted,

*/s/Benjamin W. Jeffers*
Benjamin W. Jeffers (P57161)
Attorneys for Defendant
Hickey Hauck Bishoff & Jeffers, PLLC
One Woodward Avenue, Suite 2000
Detroit, MI 48226
(313) 964-9019 (direct dial)
bjeffers@hhbjlaw.com

DATED:        August 31, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on **August 31, 2017**, my assistant electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/Benjamin W. Jeffers*
Benjamin W. Jeffers (P57161)
Attorneys for Defendant
Hickey Hauck Bishoff & Jeffers, PLLC
One Woodward Avenue, Suite 2000
Detroit, MI 48226
(313) 964-9019 (direct dial)
bjeffers@hhbjlaw.com

4822-0336-5450, v. 4

1